In our next case, we have 24-16-58, Dr. Fernandez v. Mr. Brich. Let's see here, I've got to get my cheat sheet. Mr. Kuntz, good to have you with us. Thank you. Good morning. May it please the Court, my name is Brian Kuntz and I represent Dr. Fernandez in this matter. This matter arises from the Virginia Department of Transportation's refusal to issue a determination as to the vast majority of relocation claims that he submitted as a result of having to relocate his dental practice due to a VDOT road project. Specifically, this is an appeal from the District Court's denial of Dr. Fernandez's motion to amend his complaint with regard to his equal protection claim. The District Court erred in holding that he was required to apply a heightened and inappropriate pleading requirement with regard to similarly situated comparators. The District Court relied on this Court's decision in the SAS Associates 1 LLC v. City of Chesapeake matter and held that Dr. Fernandez was required to show an extremely high degree of similarity between the similarly situated comparators and himself. The issue being, though, that the District Court applied that matter, though this Court went out of its way in its holding to find that that was an exception to the general rule of pleading when it comes to equal protection classes of one. This Court specifically recognized that that heightened standard applies to cases such as zoning decision cases that was the subject of that case. The Court went as far as to distinguish it from other class of one equal protection claims in discussing the Supreme Court's holding in Village of Willowbrook v. Olick and the cases that it relied upon. In that case, the standard that the Court was distinguishing requires the showing that the government unequal treatment is governed by a clear standard by which departures, even for a single plaintiff, can be readily assessed. And that's the appropriate standard that should have been applied in Dr. Fernandez's  The increased standard under SAS Associates applies to cases like zoning decisions in which it requires an extreme factual analysis and a broad range of discretion to the local governments who are applying those decisions. For instance, in zoning decision cases, facts such as the size of the parcel, public infrastructure, road frontage, all these types of issues go to the weight of the decision that the local government made with regard to approving or denying a rezoning. To compare oneself and claim unequal treatment under a zoning decision, one must show that those comparators are similarly situated to an extremely high degree because decisions can be based on those factors. Here, however, the clear standard under Dr. Fernandez's case is a simple yes or no question. Was a final determination issued regarding the relocation benefits that he submitted? There is no discretion to the Virginia Department of Transportation or appellees whether to approve or deny or whether he's entitled to a determination. In fact, the law requires that once the Well, they gave him one determination, right? There was a determination on part of his request and they gave him money and they gave him a letter, a notice that said you can appeal this. This is, I don't know if it uses the word final, but this is an appealable decision. Certainly. They approved $255 for Dr. Fernandez for his time spent searching for a new location. That's one. And is that, how do we know if other people are similarly situated? What's our comparator for receiving a determination and money but not all of the money or all the determination? Well, the comparator are anyone who is displaced. And Dr. Fernandez's claim is not based on the amount of money that he's received or not received. There is discretion and a factual analysis as to the amount of money that a displaced person is entitled to receive. There is no discretion with regard to whether the agency, the state agency, in this case, the Virginia Department of Transportation, is required to provide a determination or not. And that's the difference between SAS Associates 1 LLC and Village of Willowbrook-Leolic, which this court distinguished it from. And so the similarly situated comparator, as Dr. Fernandez pointed out in his complaint, are those who were also relocated and displaced as a result of the same VDOT road project. And the difference is those people would have received final determinations, whereas Dr. Fernandez, in his complaint with the factual allegations that he's alleged, has proven he has not received that final determination. But he did receive a final determination. He received it. Dr. Fernandez submitted over $500,000 worth of claims for reimbursement. He received with that letter that VDOT contends is a determination as to his entire submitted complaint or claims was a final determination as to the $255 of search reimbursement. How does that compare to these other folks? The other folks have received final determinations as to their entire submitted claims, whereas Dr. Fernandez, due to discriminatory animus, has been withheld the final determination. Where is that in your proposed amended complaint, that they received it as to the full amount that they requested? He alleges that he was treated differently from others who are similarly situated in not receiving a final determination. And you're suing only in official capacity? Correct, Your Honor. You've got an 11th Amendment problem, have you? No, Your Honor, respectfully. Under the 11th Amendment, in official capacity under the Ex Parte Young decision, requires an allegation of an ongoing harm, an ongoing violation, and prospective relief, and that's exactly what Dr. Fernandez has alleged and is seeking. But you want money. No, he wants a final determination, Your Honor. He does not want any money, okay. Right. The requested relief is to order an injunction and enjoin VDOT from withholding the final determination that they've done for now the past several years. Well, so that's a, you're claiming a denial of equal treatment that has already happened. Other people have received this determination. He was denied it and treated unequally at some point in the past. It's an ongoing denial of equal treatment. Dr. Fernandez has alleged in a discussion with the Chief Deputy Attorney General that he was told that VDOT did not consider his claim a priority and a final determination would not be forthcoming. And so it's the ongoing refusal to provide a determination that is the subject of his equal protection claim. And so that's, going back to the similarly situated comparator, unless there's any other questions on the Eleventh Amendment issue, the heightened pleading standard that the district court imposed goes beyond the requirements here. And I think we have to look. So what standard do you, what is, what are you, what is your position in the standard that the district court should have used? Certainly. No comparators? No. The general rule for surviving a motion to dismiss for an equal protection claim requires the pleading of facts to demonstrably show or plausibly that he was treated unequally from others who are similarly situated and it was due to discriminatory animus. The facts that Dr. Fernandez has pledged, pled, have shown the unequal treatment. He was told by another deputy attorney general that had he not engaged counsel and sued to pursue his rights, that he would have received not only a determination but a positive determination and would have received more money. So that's the discrimination that he's alleged. But has that, I mean, but where are the similar comparators? You have to, I think you would have to make an argument that somebody else that did not do as he did also did receive additional. Certainly. And we did allege that, Your Honor. But who are the similar comparators? Everyone else who was relocated as a result of this project. The burden of pleading at this stage, at least at the 12B6 stage, is not to name or identify by name similarly situated comparators. And the appellees even agreed with that and went so far as to state in their brief that the district court didn't even use the word name once in his opinion. And so what Dr. Fernandez has pledged, or pled at this point, is that it's plausible that he has been treated differently from others who were relocated, not as just a result of this project but other road projects, and been denied the final determinations that he's entitled to as a result of being relocated and submitting his claims. When does the statute, when does a final determination happen? It looked like there's, you can appeal, and then after an appeal a determination is considered final, from best I could find. But what's your interpretation? Under 49 CFR 24.207, I believe, it requires an expeditious review of all submitted claims, an expeditious review and determination of all submitted claims. It doesn't give- Those are claims specifically related to relocation for highway construction? Correct. Yes, relocation as a result of the road project that necessitated the destruction of his practice. It doesn't give an exact time frame, though, to address your question, Your Honor. It just says an expeditious review and determination. And based upon the pleading that the district, or I'm sorry, the Deputy Attorney General said that no determination would be forthcoming, and that VDOT did not consider his claims a priority, that is clearly a violation of the requirement of an expeditious review and determination. And so, looking at the basic requirements for, again, for a motion to dismiss an equal protection claim, Dr. Fernandez not only meets that burden, but clearly exceeds it. He has pled plausibly that his rights have been violated and that he's been treated unequally from those similar situations. Judge Jackson said that it was futile to file it? Correct. Correct. At this stage as well, too, that it couldn't meet the standards under a 12B6 motion, and that it was futile to proceed. And I think it would be also helpful to look at a case that the appellees cite in their brief as well. It's a Second Circuit case. I know it's not controlling here, but the case, I'm sorry, Seventh Circuit case, LaBella-Winneka, Inc., versus the Village of Winneka, which talks about similarly situated comparators being pled that they have to be similar in all material respects. And that's the issue here as well, too. In all material respects, it's simply that a person is relocated and displaced as a result of a road project. And that's what Dr. Fernandez has pled, that he is being treated differently from those who are similarly situated and relocated as a result of that. If there's no more questions, I'll save my time for rebuttal. Thank you. Thank you very much, sir. Mr. Pops. Thank you, Your Honor. Good morning. May it please the Court. My name is Stephen Pops. I'm the Chief Deputy Attorney General of the Commonwealth of Virginia, and I'm lucky to be joined by the Solicitor General of Virginia, Erica Maley, with me today. It's a pleasure to be before the Court on behalf of the appellees, Stephen Britsch and Lori Snyder. This Court should affirm the District Court's rulings for two reasons. First, Fernandez's motion for leave to amend is futile. The proposed second amended complaint asserts a class of one equal protection claim. However, it fails to identify any comparators with sufficient detail to permit this Court to determine whether those comparators are similarly situated to Fernandez. It also fails to allege that Fernandez suffered discriminatory treatment that was not justified by at least a rational basis. The proposed second amended complaint, therefore, would not survive a motion to dismiss. Second, the 11th Amendment bars Fernandez's backward looking equal protection claim. Nothing in the proposed second amended complaint brings it within the ex parte young exception to sovereign immunity. It does not seek prospective equitable relief from ongoing violations of federal law. For those reasons and the reasons in our brief, we ask that this Court affirm the District Court's opinion, and I look forward to any questions that the panel may have. What's your response to this argument that past action by the state in granting other people a determination but not granting the plaintiff determination constitutes an ongoing equal protection violation for purposes of ex parte young? I disagree with the argument, Judge Rushing. I think that the June 15, 2018 letter, which is in the joint appendix at 856 and 57, makes very clear that VDOT made a determination as to the claims that were submitted by Fernandez. It specifically states that if Fernandez is not in agreement with any of the determinations made, that he may file an appeal in part or in whole within 90 days of the date of that letter. Fernandez chose not to do that. Instead, he chose to file a state court claim, which was dismissed, and then a federal court claim, which was also dismissed. So the record and the allegations all show alleged action that has already been completed. There is no prospective harm. To the extent that Fernandez argues in his brief that the interest payments that he took out are an ongoing harm that clears the ex parte young burden, we disagree with that contention as well because the interest payments that he took out are a consequence of an alleged past harm that he suffered, not an ongoing one. What about these supposed conversations with other people in DOTs, who they say things that give an impression that maybe there's still something that could be decided later? You send us some more information. Does that change the analysis at all? I don't think it does, Judge Rushing. I think that all of those responses by DOT, by VDOT, were responses to outreach from Fernandez, and as a state agency, VDOT tries to be responsive to citizens when they communicate with them. The fact of the matter remains that the record is replete, and the joint appendix is as well, with repeated communications from VDOT seeking more information, more support from Fernandez for all of the claims, the dollar amounts that he submitted, and the record demonstrates that he did not submit those claims. And the 49 CFR Part 24, which was referenced in my colleague's argument, actually requires that all claims must be submitted within 18 months after the displacement date. And so even taking the most generous reading, that time has long passed by the time that these subsequent conversations happen or letter and e-mail communications happen. Do we have to address Ex parte Young, or could we address only the futility of the amendment? Would that resolve the case entirely from your perspective, or are these sort of independent grounds that you identified at the beginning of your argument, or are they both necessary grounds? Yes, Your Honor, they're independent grounds. The court may address either of them or both of them, but I don't believe the court needs to address the 11th Amendment argument. Like normally we would do that first, right, but not necessarily a requirement? I think so. I think that's right, Your Honor. That statement that somebody supposedly made and they allegedly made, that's pretty rough, though, about criticizing him for hiring a lawyer in the middle of the case. I think those are allegations, Your Honor, and I think that they reflect the cold, factual reality of this case, which is that Fernandez received a written determination on June 15th of 2018 apprising him of his rights to appeal and the time by which he had to do so. Instead of doing that and filing an appeal with VDOT, he chose to pursue two failed state and then a federal lawsuit. I think that those alleged comments, which happened four years after the time for which he should have appealed, simply reflect that reality, that there was a process by which he could have availed himself, and Fernandez chose not to do that. Let me ask you about this argument that the lower court uses heightened standard. He . . . What, and I asked earlier, what would you . . . How would you detail how he's supposed to, I guess, imply who the similar situated comparators are? Judge Benjamin, I think that the SAS Associates case is instructive in this regard, and in that case, this court held a little bit more than a year ago that a plaintiff alleging a class of one equal protection claim has to show an extremely high degree of similarity between his circumstances and those of his alleged comparators. Now, in this, in SAS, the plaintiff alleged ten comparators, and this court still found that that was insufficient as a matter of law. In this case, Fernandez has not alleged any comparators at all. Fernandez has alleged that he . . . the comparators are other displaced persons along this project and similar projects, and that absolutely fails as a matter of law, and it fails under this circuit's precedence. But I think he also makes this argument that, well, he doesn't . . . He, therefore, doesn't . . . I guess the information is not readily available to him, but that you all have the information, and because he cannot have discovery, then, therefore, he was not able, I guess, to name his similar comparators. I'm curious to hear your argument or response to that. Thank you, Judge Benjamin. My response is that one of the bedrocks of federal practice is you have to have a good faith basis to allege your complaint in the first place. And if Fernandez did not even have a single comparator to allege in his complaint, much less the ten that the plaintiff and SAS associates did, that is not a question for discovery. That is a threshold question and perhaps raises other questions about the sufficiency of the pleading in the first place. If there are no further questions, I thank the Court for its time and ask that it affirm the ruling. Thank you. Thank you very much, sir. Mr. Coon? Thank you, Your Honor. To respond to my opponent's arguments, I would first like to address his claims that the June 15, 2018, letter that Judge Rushing, I think, mentioned before, is a determination as to the entirety of Dr. Fernandez's claims. And VDOT's own actions after that letter, after sending that letter, belies arguments here today. Just 12 days later, on June 27, 2018, and that's at 1376 in the joint appendix, VDOT sent another letter saying that to continue its review, it needs more information to move forward. That in and of itself is an admission that VDOT did not consider that June 15, 2018, letter a determination in an appealable instance. Then the fact that they continue to consider the information provided after the State Supreme Court case goes on to show that they also did not consider that June 15, 2018, letter a final determination. So the fact that the only claim that was addressed in that letter was a $255 claim and a request to keep going and to keep providing information shows that no final determination has ever been made on the bulk of Dr. Fernandez's claims. So you're saying you would have no equal protection claim. This appeal would go away if VDOT sent the dentist a letter saying everything is denied. Absolutely.  Your Honor, that's what we've been asking. But because instead they've said, well, try to, you know, give us some more documents. There might be a chance that that's the equal protection claim. Well, you know, the equal protection claim is that we've submitted everything that they've asked for. We've submitted everything that they asked for in 2021 and sent multiple follow-up letters to Apelli Snyder and received no response from them. Not the response saying we still need more information or we're considering this or anything like that. Complete silence. And then, of course, hearing from the deputy, the chief deputy attorney general, that VDOT did not consider their claim a priority and no final determination would be forthcoming. That's the issue. And I think you're right. A final determination whether everything was approved, denied, or somewhere in between would remedy the equal protection clause. So if instead of saying, you know, we don't, you know, please send us more information, if instead they said you haven't sent us enough information, denied, then he would be satisfied and this lawsuit would be dropped. If they said they haven't sent us more information, I'm not sure that would be it because we've sent them everything they've asked for and they've. Well, your equal protection claim is about you want a determination.  It seems that you would have to, your claim would be, would disappear if they gave you a determination saying we're, no, we're not giving you any money. I think that that would then allow Dr. Fernandez to pursue the appellate procedures that Mr. Potts has mentioned in his claim that he's been unable to pursue because he hasn't received the determination. But he didn't pursue those from the first determination. Well, only under the $255. He did not object to that small fraction of a determination, no. And just to quickly address. They offered you $255 and you're asking for half a million? Yes, sir. Yes, Your Honor. But that was one cost submitted or one claim submitted in a broad spectrum of costs that had to do with adjusting his new office space to a dental practice, moving personal property, all these types of things. That was only in relation to a separate claim, one individual claim he submitted for his time in searching for a new location. There's a broad spectrum of different costs that can be reimbursed. And that was one small one. And then just to briefly address the appellee's claims that for some reason, Dr. Fernandez failed to submit his claims within 18 months. That has never been raised before. All of his claims were submitted well within 18 months, within one year actually of his relocation. And that has never been a defense or an issue that the appellees have raised before. And it is nowhere found in the record. And then finally, Judge Benjamin, to address your question to which the appellees replied regarding the heightened standard in SAS and how that should still be applicable, I want to actually read from the court's opinion when it talked about the OLEC case and the general standard of clear standards by which you can depart from and have a readily accessible analysis. The court said, in contrast, discretionary zoning decisions such as the one here are generally not governed by the clear standard. To establish a class of one claim, a person complaining of a zoning decision must therefore show an extremely high degree of similarity. And so the court was clear that that extremely high degree of similarity in that case was specifically to zoning decision cases which require a much higher factual analysis because the differences between the comparators are not as easily ascertainable and subject to a factual analysis and discretion. Thank you. Thank you very much, sir. We will adjourn court for the day. Madam Clerk, and we will come down and greet counsel and wish everyone the  Court stands adjourned until tomorrow morning. That states honorable report.
judges: Robert B. King, Allison J. Rushing, DeAndrea Gist Benjamin